[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 630.]

**ROBERTS, TRUSTEE IN BANKRUPTCY FOR WIKEL MANUFACTURING COMPANY, INC., APPELLANT AND CROSS-APPELLEE, *v*. UNITED STATES FIDELITY & GUARANTY COMPANY, APPELLEE AND CROSS-APPELLANT.**

[Cite as *Roberts v. United States Fid. & Guar. Co.*, 1996-Ohio-101.]

*Insurance—Insurer does not act in bad faith in failure to defend insured in breach of distributorship contract action, when—Trial court's determination of damages not disturbed, when—Allowance of setoff of damages reversed, when.*

(No. 94-2511—Submitted February 6, 1996—Decided June 26, 1996.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Erie County, No. E-93-35.

————————————

{¶ 1} On May 29, 1985, Nick and Elinor Miller filed a lawsuit against Wikel Manufacturing Company, Inc. and David Wikel, individually (collectively, "Wikel"), in which they alleged that Wikel had breached a distributorship contract. Wikel was covered by comprehensive general liability insurance issued by appellee and cross-appellant, United States Fidelity & Guaranty Company ("USF&G"). The policies provided that USF&G had the "right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage." USF&G assigned an attorney, William Pietrykowski, to defend the suit, but Wikel's own attorney, Gary Ebert, ended up filing all of the pleadings and otherwise handling the defense. After trial, the Millers were awarded $1.5 million in damages on their breach of contract claim.

{¶ 2} The court of appeals reversed the verdict on the ground that the doctrines of waiver and estoppel compelled a judgment in favor of Wikel. This court reversed the court of appeals' judgment, finding that Wikel did not raise

waiver or estoppel in its answer or at any time and, thus, was barred from raising those defenses. *Miller v. Wikel Mfg. Co., Inc.* (1989), 46 Ohio St.3d 76, 545 N.E.2d 76. This court also found that the court of appeals had erred in finding that the contract was terminable at will, since Wikel had also waived its right to appeal that issue.

{¶ 3} Wikel subsequently filed a complaint for declaratory judgment and money damages against USF&G in which it alleged that USF&G failed and refused to defend Wikel and, as a result, it had a $1.5 million judgment entered against it which forced it to file bankruptcy and sustain additional damages. The complaint also alleged that Wikel's own attorneys had committed malpractice in defending the suit. The following pertinent evidence was adduced at trial.

{¶ 4} Barbara Metusalem, a claims manager for USF&G, testified that USF&G did not communicate to Wikel that USF&G had decided internally that there was no coverage for the claims and that Pietrykowski would not be involved in the case. Pietrykowski testified that although he had been assigned by USF&G to defend the case, he did not assume the position as counsel for Wikel, as it appeared that Wikel was well represented by Ebert and that Wikel had indicated that it preferred to have its own attorney. George Paytas, Vice-President of Finance for Wikel, testified that he never received a decision from USF&G on coverage for the Millers' claim or any indication that USF&G was limiting Pietrykowski's involvement or withdrawing its defense. Leland J. Welty, a C.P.A., testified that the judgment and resulting bankruptcy caused Wikel losses totaling $8,206,099. Linda Miller, an independent insurance agency associate who handled Wikel's claims with USF&G, testified that she did not receive the Miller pleadings from Wikel until the fall of 1985, at which time she forwarded them immediately to USF&G. Wikel admitted two reservation of rights letters from USF&G into evidence, one dated December 16, 1985 and one dated August 29, 1986. The December letter was addressed to Wikel Manufacturing Company and was sent to

the attention of Paytas. It indicated that the intentional breach of contract claim made against Wikel would not be covered and concluded, "These allegations make it necessary to make our investigation and legal discovery under a strict reservation of rights until all the facts are determined." The August letter was sent to Wikel's attorney, Gary Ebert, and was copied to Wikel Manufacturing. This letter mentioned specific policy defenses and concluded with the statement, "[W]e are undertaking defense of this matter under a strict reservation of rights ***."

{¶ 5} On December 10, 1992, the trial court filed its findings of fact, conclusions of law and judgment entry, in which it held, in part, that USF&G had a duty to defend Wikel in the Miller suit, and that as a proximate result of the breach of the contractual duty to defend and/or the negligent performance of that duty, Wikel sustained actual damages of $1.5 million, but that USF&G was entitled to a setoff in the sum of $1 million due to Wikel's settlement with the attorney defendants. The trial court also, on June 7, 1993, issued an entry holding that USF&G had not acted in bad faith toward its insured.

{¶ 6} The court of appeals held that while the trial court properly set forth this court's standard for the recovery of compensatory damages in a bad faith tort claim, enunciated in *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228, the trial court erred in also including language in its entry that set forth the standard for an award of punitive damages in bad faith claims. Accordingly, the court of appeals remanded the trial court's finding that USF&G did not act in bad faith to the trial court for consideration using the proper legal standard.

{¶ 7} This matter is now before this court upon the allowance of a discretionary appeal and cross-appeal.

_____

*Murray & Murray Co., L.P.A., Dennis E. Murray* and *Kirk J. Delli Bovi*, for appellant and cross-appellee.

*Spengler Nathanson, James R. Jeffery, Teresa L. Grigsby* and *James D. Jensen,* for appellee and cross-appellant.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 8} This court must determine whether the trial court properly made the following findings: (1) that USF&G did not act in bad faith in breaching the duty to defend Wikel; (2) that USF&G was entitled to a setoff; and (3) that Wikel was entitled to only $1.5 million in damages for USF&G's breach of its duty to defend. For the following reasons, we uphold the trial court's determination that USF&G did not act in bad faith and, thus, we reverse that portion of the court of appeals' judgment remanding this issue to the trial court for reconsideration. We reverse the court of appeals' allowance of a setoff of damages. Finally, we affirm the court of appeals' determination that Wikel is entitled to only $1.5 million in damages. Accordingly, we affirm the judgment of the court of appeals in part and reverse it in part.

{¶ 9} Appellant, Wikel's trustee in bankruptcy, argues that we should remand this cause to the trial court for application of this court's holding in *Zoppo v. Homestead Ins. Co*. (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus. While *Zoppo* involved an insurer's bad faith failure to process a claim, appellant argues that it should be extended to apply to cases involving bad faith failure to defend. In *Zoppo*, we held, at paragraph one of the syllabus, that "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." In *Zoppo* we abandoned the intent requirement of *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228. We decline to extend *Zoppo* to this particular case of bad faith failure to defend, as *Zoppo* was decided after the trial court's and court of appeals' decisions in this case.

4

This case has been litigated for over ten years and should come to final resolution before this court.[1]

{¶ 10} The trial court found that USF&G did not act in bad faith, applying the intent requirement of *Said, supra.* In support of this finding, the trial court cited the definition of "bad faith" set forth in *Said*, which included the requirement that in order to demonstrate bad faith, "wrongful intent" must be proven. The court noted that "[i]t is not enough that the insurance company exercised poor judgment or even that it acted recklessly." While the trial court's entry erroneously included language setting forth the standard for an award of punitive damages in bad faith claims, we find that the inclusion of this language was harmless here,. as the entry indicates that this was merely an additional reason for finding no bad faith. Thus, regardless of the inclusion of this erroneous language, we believe that the trial court found no bad faith under the properly cited definition articulated in *Said*, *supra.* In fact, the trial court concluded that it found no bad faith "under the standards articulated by the Ohio Supreme Court." Accordingly, we find it unnecessary to remand this matter to the trial court for reconsideration of this finding.

{¶ 11} We must next address whether USF&G was entitled to a setoff in the amount of $1 million by virtue of Wikel's settlement in that amount with Wikel's own counsel. A setoff was improper here, as Wikel's professional negligence claim against its own counsel was separate and distinct from Wikel's breach of contract claim against USF&G. The attorney-client relationship between Wikel and its separate counsel arose out of a particular contract. The insured-insurer relationship between Wikel and USF&G arose out of a completely separate and distinct contract. The insurer, USF&G, and Wikel's separate counsel had no relationship with each other and no determination was ever made that Wikel's separate counsel

---

1. While we decline to extend *Zoppo* to this particular case of bad faith failure to defend, we leave it open as to whether *Zoppo* may be applied to future cases.

in the Miller action bore any responsibility for the damages which the trial court awarded against USF&G in the instant case. Accordingly, we reverse the court of appeals' finding that the trial court properly allowed the setoff.

{¶ 12} Appellant next argues that the trial court erred in awarding only $1.5 million in damages (the Miller judgment), as it demonstrated that the Miller judgment was the reason it had to eventually seek bankruptcy protection, which led to the demise of the business and an $8,206,099 economic loss to the company. We will not disturb a decision of the trial court as to a determination of damages absent an abuse of discretion. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. While the trial court did not state its reason for allowing $1.5 million as compensatory damages, we agree with the court of appeals that the trial court must have found that these additional debts (or losses) were remote, speculative, and not supported by the evidence. The appellate court found that Wikel was entitled to recover only those damages which could reasonably be considered as arising naturally from USF&G's breach of the duty to defend. The appellate court then affirmed the trial court's damages, concluding that "the trial court's finding that the actual damages sustained by Wikel as a direct result of USF&G's contractual breach of its duty to defend Wikel was $1.5 million is supported by the evidence." We agree with both lower courts that the alleged $8.2 million loss could not have been seen to arise from the $1.5 million judgment against Wikel.[2] Accordingly, we affirm the court of appeals' finding that the trial court's determination of damages was not against the manifest weight of the evidence.

*Judgment affirmed in part*
*and reversed in part.*

---

2. Wikel's amended complaint prayed for $7 million in damages and, thus, the most it would have been entitled to is that amount of damages.

MOYER, C.J., DOUGLAS and GRADY, JJ., concur.

———————————

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 13} I concur but would allow a setoff of the amount of the Ebert settlement and therefore agree in part with Justice Cook's dissenting opinion.

PETREE and COOK, JJ., dissent.

CHARLES R. PETREE, J., of the Tenth Appellate District, sitting for WRIGHT, J.

THOMAS J. GRADY, J., of the Second Appellate District, sitting for RESNICK, J.

———————————

**COOK, J., dissenting.**

{¶ 14} I concur with the decision of the majority upholding the trial court's decision that the plaintiff did not prove the tort of bad faith. I would, however, reverse the court of appeals' decision on the claim for breach of the contract to defend, as I believe that there simply is no causal connection between Wikel's damages, that is, the Miller judgment, and USF&G's alleged breach of the duty to defend.

{¶ 15} This case does not involve coverage issues. Instead, the only legal basis for attaching liability to USF&G for the Miller judgment is through a theory of a breach of the duty to defend. Wikel concedes in its reply brief that a breach of the duty to defend may not create coverage where none otherwise exists. Thus, without a right to coverage, the only way USF&G can be liable to pay the amount of the judgment is if it is determined that USF&G breached a duty to defend and that breach proximately caused the judgment to be rendered against the insured.

{¶ 16} Yet, the coverage issue is important, as it triggered the insured's option to retain personal counsel and control the defense. USF&G, although having agreed to provide a defense under a reservation of rights, did not defend the case.

The reservation of rights letters introduced at trial put Wikel on notice of the potential that it might have direct exposure on the Miller complaint. That Wikel understood this potential is evident from its initial and continued retention of Ebert to act as defense counsel. Ebert, as Wikel's own attorney, took the case to trial, apparently with no objection from Wikel. It was the legal strategy of Ebert that ultimately caused the judgment in favor of the Millers. And it is Ebert's malpractice, for which Wikel received a $1 million settlement, not the breach of the duty to defend by USF&G, that resulted in the damages Wikel now seeks to pass on to USF&G.

{¶ 17} The wrongdoing by USF&G, according to the facts evinced at trial, was that it assigned an attorney to the defense of the Miller claim and never formally revoked that assignment. Yet, counsel is presumed competent and Wikel was represented in this claim by competent counsel of its choosing. Maybe Wikel could have claimed against USF&G for the cost of its defense. But it cannot reasonably claim as damages the amount of the Miller judgment by saying that the judgment directly and proximately flowed from the fact that *particular counsel*, USF&G's assigned counsel, did not defend the case.

{¶ 18} For the foregoing reasons, I would reverse the judgment that Wikel's damages in the amount of $1,500,000 directly resulted from breach of USF&G's duty to defend. Moreover, even assuming *arguendo* that the judgment amount could be attributed to the breach of the duty to defend, I would agree with the court of appeals that the amount of the Ebert settlement should be set off from the judgment rendered against USF&G for the same injury.

PETREE, J., concurs in the foregoing dissenting opinion.

————————————