DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Lawrence County Municipal Court which awarded Plaintiffs-Appellants Doug and Jamie Mills approximately ten percent of the damages they requested for the deficient carpentry work performed by Defendant-Appellee Steve Perry. Appellants argue, inter alia, that the judgment was against the manifest weight of the evidence. We agree and reverse the trial court.
 I. The Proceedings Below {¶ 2} Plaintiffs-Appellants Doug and Jamie Mills entered into a series of contracts with Defendant-Appellee Steve Perry, who was doing business as Alyse Cabinets and Trim, for certain carpentry work to be done to their newly constructed house in exchange for the sum of $18,143.40.[2] The terms of the contracts required appellee to provide and install the following items in exchange for the indicated amounts: a hardwood floor and kitchen and bathroom cabinets for $10,690;[3] a staircase and banister for $3,830;[4] marble countertops for $1,002.40; and trim-work for $2,621.
 {¶ 3} Appellants paid a total of $12,594.50 to appellee and refused to pay a final bill of $3,400 because they were very unhappy with the work.[5] After repeatedly contacting appellee and requesting that he redo the work, appellants filed a complaint in the Lawrence County Municipal Court alleging that appellee failed to perform his obligations in a workmanlike manner. Appellants requested $12,288.43 in damages. The case proceeded to a bench trial.
 A. Appellants' Case {¶ 4} Ms. Mills and Darrell Finley, a contractor with Interior Trim and Finish, testified in favor of appellants. Appellants also offered into evidence a videotape of the work at issue in this case. The key problem areas identified by appellants are as follows.
 1. Staircase and Banister {¶ 5} In regard to the staircase and banister appellee installed, Ms. Mills stated the following: the steps were of varying heights — the first step was nine inches, the second was five inches, and the rest were seven inches; the nails were protruding and were intermittently filled with wood putty; the spindles supporting the banister were too short, which caused the banister to be unstable — this was due to the fact that appellee cut the dowels off the spindles instead of drilling holes into the banister in which to insert them; two different types of spindles were used, one of which was never approved by appellants; there is a skirt board on only one side of the staircase and it is hollow, rather than solid as was agreed. The videotape also documented these defects.
 2. The Kitchen {¶ 6} Ms. Mills also testified, and the videotape documented, that the countertop installed by appellee was bubbling up in the middle.
 3. Flooring {¶ 7} In regard to the hardwood flooring installed by appellee, Ms. Mills stated the following: some of the wooden slats on the floor would slide back and forth because there were gaps between the slats and they were intermittently nailed down; the slats that were nailed down, were done so by driving a nail through the middle of the board instead of using a special tool which would have hidden the nails; the flooring did not extend under the refrigerator or behind cabinets; transition pieces were not installed where the floor met the carpet, which left exposed jagged wooden edges; and two different types of flooring were used, one of which was never approved by appellants. The videotape also documented these defects.
 4. The Closet Door {¶ 8} Ms. Mills testified, and the videotape documented, that appellee cut a door to fit a small closet but failed to sand the cut edge, leaving a splintered, rough edge.
 5. The Bathrooms {¶ 9} In regard to appellee's carpentry in the two bathrooms, Ms. Mills stated the following pertaining to the first bathroom: instead of using oak panels to house the motors of a whirlpool bathtub, appellee used plywood which completely encased the motors and prevented access to them; there were no trim pieces installed around the base of the vanity; and the crown molding installed around the vanity was too short, leaving a noticeable gap between the vanity and the wall.
 {¶ 10} As to the second bathroom, Ms. Mills testified that the base on which the vanity rests was too short and a trim piece was not installed around it. The videotape also documented these defects.
 6. Finley's Testiomy {¶ 11} Finley corroborated much of Ms. Mills' testimony. In short, Finley stated that the work performed by appellee was improper and that much of it needed to be completely replaced. He estimated that, for his company to do the work, it would cost $11,091.98.
 B. Appellee's Case {¶ 12} In response, appellee cross-examined appellants' witnesses and offered his own testimony. Appellee conceded that his work was substandard. Specifically, he admitted that he cut the dowels off of the spindles instead of installing them correctly or using a different type of banister; that two different types of spindles were used; he admitted that the stairs were improperly installed; that the flooring was not what had been requested and that he had used two different types of flooring; he admitted that he did not use the proper tool in installing the flooring; and that the slats in the flooring were not supposed to move.
 {¶ 13} In fact, appellee stated that he himself would not have paid for the work he had done unless it was fixed. He further testified that he had expressed to appellants his willingness to fix the admitted errors, but that appellants refused to allow him to do so because they demanded that the flooring, staircase, and banister be completely reinstalled.
 C. The Judgment of the Trial Court {¶ 14} Subsequently, the trial court issued its decision, finding that appellee performed substandard work, but that appellants were only entitled to approximately ten percent of the damages they requested, $1,250. In so holding, the trial court explained its reasoning as follows:
 {¶ 15} "The [Mills] presented evidence that the work was not done in a workmanship like [sic] manner * * *. The court finds that the [Mills] were seeking the lowest price without considering the quality of the contractor. The court finds that the wood flooring installed is not prefect [sic] but that the estimate to repair is unreasonable considering the defects in the floor. The court finds that removal of the floor is extreme remedy [sic] in this case and finds for [appellee] on this issue. The court finds that the stair rails were not properly installed. The railing would not support someone leaning on the railing. The stairs need not be replaced only the railing and risers. The court finds that [$1,000] would be sufficient for labor and material to replace the balusters. The court finds that the kick under the bath room [sic] cabinets was not as long as the cabinets and allows [$250] for that repair. The court finds on all other items for [appellee] since he was not allowed to return to correct these items."
 II. The Appeal {¶ 16} In July 2001, appellants filed a timely appeal with this Court, assigning the following errors for our review.
 {¶ 17} First Assignment of Error: "the trial court erred in its determination of the amount of damages because the amount awarded was not supported by the manifest weight of the evidence."
 {¶ 18} Second Assignment of Error: "the trial court erred in finding for the appellee on the issues of repair of the flooring, stairs, and "on all other items" as said findings were against the manifest weight of the evidence and an abuse of discretion."
 {¶ 19} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus. With this standard in mind, we will address appellants' specific arguments.
 A. Workmanlike Manner {¶ 20} Contractors have a duty to perform construction services in a workmanlike manner. See Mitchem v. Johnson (1966), 7 Ohio St.2d 66,218 N.E.2d 594; Barton v. Ellis (1986), 34 Ohio App.3d 251, 518 N.E.2d 18;Simms v. Heskett (Sept. 18, 2000), Athens App. No. 00CA20. This duty is imposed upon them as a matter of law. See Simms, supra.
 {¶ 21} Here, there is no question that appellee's work was not performed in a workmanlike manner. Appellee readily concedes this in his testimony. Thus, the sole issue we must resolve is whether the trial court's award of $1,200 in damages was proper.
 B. Damages {¶ 22} The proper measure of damages, in a case such as this, is the reasonable cost of placing the house in the condition contemplated by the parties at the time they entered into the contract. See Jones v.Honchell (1984), 14 Ohio App.3d 120, 470 N.E.2d 219; Chess v. Scott
(Dec. 23, 1994), Portage App. No. 94-P-0044. "In order to place a building in the condition contemplated by the parties at the time of the contract, `repair of deficient work may involve both additional activities necessitated by the deficient work, and activities previously omitted, but necessary, to proper performance in a workmanlike manner.'"McCray v. Clinton Cty. Home Improvement (1998), 125 Ohio App.3d 521,523-524, 708 N.E.2d 1075, quoting Craft Builders v. McCloud (Jan. 14, 1997), Franklin App. No. 96APE05-716.
 {¶ 23} The injured party has the burden of proving damages by a preponderance of the evidence. See Capital Equipment Enterprises, Inc. v.Wilson Concepts, Inc. (1984), 19 Ohio App.3d 233, 484 N.E.2d 237.
 {¶ 24} The trial court denied the amount of damages requested by appellants on, essentially, three bases: (1) because "the [Mills] were seeking the lowest price without considering the quality of the contractor"; (2) because it believed that the flooring "is not perfect but that the estimate to [replace the flooring] is unreasonable" and an "extreme remedy"; and (3) because "[appellee] was not allowed to return to correct these items." Accordingly, the trial court disregarded the damages testimony offered by appellants, which was the only evidence in the record regarding cost estimates for repairing appellee's admitted defective work, and unilaterally concluded that the appropriate cost for mending the two defects it deemed necessary — the kick under the bathroom cabinet, and the railing and spindles — was $1,250.
 {¶ 25} First, there is simply no evidence in the record supporting the trial court's conclusion that "the [Millses] were seeking the lowest price without considering the quality of the contractor." Moreover, such a finding is irrelevant to the task at hand. Having concluded that the contractor's obligations were not performed in a workmanlike manner, the focus of the trial court's analysis should turn to whether the homeowner proved the requested damages by a preponderance of the evidence. SeeMcCray v. Clinton Cty. Home Improvement, 125 Ohio App.3d at 521,708 N.E.2d at 1075; Capital Equipment Enterprises, Inc. v. Wilson Concepts,Inc., 19 Ohio App.3d at 234, 484 N.E.2d at 237.
 {¶ 26} We are unaware of any penalty to the homeowner for failing to adequately investigate the "quality of the contractor." Such a requirement sounds of the caveat-emptor doctrine applicable to sales agreements. Cf. Mitchem v. Johnson (1966), 7 Ohio St.2d 66, 70,218 N.E.2d 594, ("caveat emptor controls the purchase and sale of a completed structure"); accord Traverse v. Long (1956), 165 Ohio St. 249,135 N.E.2d 256. Here, we are presented with service contracts, not sales agreements.
 {¶ 27} Simply put, contractors must perform their services in a workmanlike manner. If the contractor fails to do so, irrespective of theprice charged, he or she is liable to the homeowner.
 {¶ 28} Second, the trial court's conclusion that appellants are not entitled to reimbursement for the defective floor is also erroneous. While it may be unreasonable to require appellee to completely replace the floor, it is reasonable for appellants to be compensated for receiving a floor from appellee that the trial court and appellee concede is defective.
 {¶ 29} Third, we are unaware of any penalty for recovery because the homeowner did not first allow the contractor "to return to correct these items." The homeowner is simply not required to allow the contractor to fix the defective work before he or she is able to recover damages for the faulty work. Rather, the homeowner is simply required to supply the trial court with a reasonable estimate to make the repairs: "The proper measure of damages * * * where a contractor has failed to perform in a workmanlike manner is the cost of repairing the deficient work." (Emphasis added.) Dovetail Constr. Co. v. Baumgartel, Washington App. No. 00CA2, 2001-Ohio-2606; Barton v. Ellis (1986), 34 Ohio App.3d 251,518 N.E.2d 18.
 {¶ 30} Fourth, and finally, we note that the trial court did not indicate how it determined that $1,250 was the proper amount of damages to award appellants. See, generally, Roberts v. United States Fid. Guar. Co. (1996), 75 Ohio St.3d 630, 1996-Ohio-101, 665 N.E.2d 664
(explaining that, while the trial court does not have to accept the testimony of a witness, it cannot arbitrarily select damages). While the $250 allocated to the kick under the bathroom cabinet is identical to the estimate provided by Finley, the $1,000 allocated to fixing the railing and spindles is not based on testimony in the record. As we noted earlier, only appellants offered estimates for repairing the defective work. Appellee offered no evidence whatsoever as to the cost of the repairs.
 III. Conclusion {¶ 31} For the foregoing reasons, we find that the judgment of the trial court is against the manifest weight of the evidence. Accordingly, we sustain appellants' assignments of error and reverse the judgment of the Lawrence County Municipal Court.
 {¶ 32} This cause is remanded for further proceedings consistent with this opinion. On remand, the trial court must determine precisely what is the reasonable cost for placing appellants' home in the condition contemplated by the parties at the time they entered into the contracts. See Jones v. Honchell, 14 Ohio App.3d at 120, 470 N.E.2d at 219; Chessv. Scott, supra.
REVERSED AND REMANDED.
Abele, P.J., and Harsha, J.: Concur in Judgment Only.
[2] We note that this sum is inconsistent with that used by the trial court because it did not factor in the trim-work.
[3] We presume that this price includes the hardwood flooring. However, we note that the parties, as well as the trial court, never specifically indicated the cost for providing and installing the hardwood floor.
[4] We note that the parties did not set forth in the contracts an exact amount for the installation of the staircase and banister. However, appellants concede that appellee gave them an estimate of $1,800 for the installation, and that they permitted appellee to proceed to install them.
[5] The sum of appellants' payment and the unpaid bill, $15,994.50, does not total the amount contracted for, $18,143.40. This discrepancy was not explained in the record.