DECISION AND JUDGMENT
{¶ 1} This case is before the court on appeal of the September 19, 2007 judgment of the Erie County Court of Common Pleas which, following a trial to the court, awarded plaintiff-appellee/cross-appellant, Home Port Developers, Inc. ("Home Port"), damages stemming from an option to purchase a real estate development between Home Port and defendant-appellant/cross-appellee Lance C. Warner ("appellant"). *Page 2 
 {¶ 2} On March 21, 2002, Home Port commenced this breach of contract action against appellant arguing that appellant failed to pay in excess of $170,000 for costs incurred prior to appellant's termination of the option contract. Home Port alleged that as a result of the breach it incurred additional damages of approximately $200,000. Home Port also alleged fraudulent misrepresentation, conspiracy, and breach of fiduciary duty; Home Port requested punitive damages.[1]
 {¶ 3} On October 10, 2003, appellant filed an answer and counterclaim. The counterclaim alleged that Home Port breached the option contract by failing to reimburse appellant the amounts he advanced during the option period.
 {¶ 4} Due to the uniqueness of the option contract and the complexity of the issues, the parties agreed to have the case tried to the court. The trial was held on June 20, 21, and 22, 2007.
 {¶ 5} A recitation of the facts as presented at trial is as follows. Home Port was incorporated in August 1990; the shareholders included David Stearns and Thomas Byington, as equal 40 percent partners, and Frank Moscioni, a 20 percent minority shareholder and Home Port's accountant. The business was formed for the purpose of purchasing real property known as Snug Harbor Subdivision or Shades of Nantucket located in Sandusky, Erie County, Ohio, for a purchase price of $1.6 million. The property consisted of 52 lots on a channel adjacent to Sandusky Bay. Home Port *Page 3 
intended to develop the property with boathouses (condominiums built over attached boat wells). In July 1998, because it lacked capital to build a model boathouse with the intent to boost lot sales, Home Port entered into a listing agreement with appellant, a commercial real estate agent. The agreement was for the sale of the entire development for $2.1 million; however, appellant was also authorized to sell individual lots. A subsequent listing agreement was signed on November 1998, with a purchase price of $2.3 million. The listing was continued though December 2000.
 {¶ 6} During the listing period, appellant found a potential buyer for the property. On March 23, 2000, Mick Coles sent Home Port a "non-binding offer" to purchase the property. Following a lengthy negotiation period, Coles ultimately determined that his funds were too limited due to business ventures he was perusing at the time. Not wanting to lose the sale, appellant proposed a method by which the property could be held for Coles until he was ready to go forward with the sale and Home Port could get its much-needed financing.
 {¶ 7} On October 24, 2000, after a few weeks of negotiations, appellant and Home Port entered into a contract designated as an option to purchase. The agreement gave appellant a two-year option[2] to purchase the property for $2.1 million and included the following terms and conditions: (1) an option price of $100,000 payable as a $10,000 deposit and three additional $30,000 payments, to be paid in full by May 6, 2001; *Page 4 
(2) payment of $85,000 to be paid by appellant to Lews Construction; (3) additional construction costs estimated at $75,000; (4) income taxes estimated at $80,000 stemming from appellant's request to convert Home Port's tax accounting to the cash method; (5) operating expenses of Home Port; (5) payment of $25,000 for demolition of the sunshade on the property; (6) sheet piling costs estimated to be $125,000; and (7) additional construction costs estimated to be between $600,000 and $1,000,000.
 {¶ 8} Section five of the agreement provided for repayment of funds provided by appellant as follows:
 {¶ 9} "The Option Price is non-refundable and shall be retained by Grantor if Grantee does not exercise the Option to Purchase within the time permitted herein, or if Grantee fails to perform any obligations or make prompt and full payment of any sums as required under the terms hereof. All other amounts paid or advanced by Grantee under this Option to Purchase shall be repaid to Grantee by Grantor in the event that the Option is not exercised, with such repayment to be as follows:
 {¶ 10} "A. All "Development Expenditures" (costs for sheet piling, finger docks, and boathouse construction) paid or advanced by Grantee for a lot or boathouse shall be repaid when the lot or boathouse are sold, such repayment to be made from the net sale proceeds of the lot or boathouse, after deducting closing costs and expenses and payments, if any, for mortgage releases. * * *."
 {¶ 11} Paragraph "B" provided for reimbursement of the operating expenses; the provision had four hash marks through it and the following handwritten notation: *Page 5 
"Paragraph deleted 10/24/2000" and it was initialed by appellant, David Stearns, and Thomas Byington.
 {¶ 12} Finally, paragraph eight provided:
 {¶ 13} "Application of Net Sale Proceeds During Option Term. If, during the term of this Option to Purchase, any lots with boathouses constructed thereon are sold by Grantor, Grantee shall be repaid from the net sale proceeds for all Development Expenditures paid by him, such repayment to be made at closing of such sale(s). The balance of the net sale proceeds shall belong to Grantor, but the amount of such balance of the net sale proceeds shall be applied against the Purchase Price to be paid by Grantee for the Property if this Option is exercised within the time set forth above."
 {¶ 14} On the date the option agreement was signed, appellant paid the $10,000 option deposit and also tendered a check for $85,000 which represented the expense owed to Lews Construction for construction of a boathouse. It is undisputed that appellant never paid the remaining $90,000[3] due on the option price.
 {¶ 15} During the option, the parties agreed that appellant paid various additional amounts as required under the contract. Such amounts included: (1) $25,452 to remove the sunshade; (2) $53,860.79 to cover the tax consequences of converting to a cash accounting method; (3) $131,500 to Shoreline Contractors, Inc., for sheet piling and finger dock construction; (4) $40,181 for completion of the boathouse north of the *Page 6 
sunshade; (5) $146,901.05 for costs incurred in the construction of four boathouses; and (6) $23,755.58 in additional construction costs.
 {¶ 16} During the option period appellant also paid approximately $53,000 in operating expenses and $10,000 in marketing expenses. Appellant was reimbursed $135,000 of the development expenditures from the net proceeds of a lot sale.
 {¶ 17} On October 1, 2001, approximately one year into the two-year option period appellant, without notice, terminated the option due to financial concerns. Appellant acknowledged that a $64,083 account payable existed. There was also evidence presented that additional unpaid development expenses of $111,186.96 were incurred prior to the termination of the agreement. Frank Moscioni testified that as of the trial date, Home Port had no mortgage debt and was current on its taxes.
 {¶ 18} At the conclusion of Home Port's testimony, appellant moved for a directed verdict as to the claims asserted by Lews Construction and Home Port's punitive damages claim. The court granted appellant's motion as to the punitive damages claim.
 {¶ 19} On July 27 2007, the magistrate filed his decision. The magistrate found that appellant breached the option contract by failing to pay the full $100,000 option price and by failing to pay various amounts he was obligated to pay under the option. Specifically, he found that Home Port was entitled to the $90,000 balance due on the option price and $175,269.96 for unpaid development expenses which were incurred prior to October 1, 2001. The magistrate calculated the total of both amounts, plus interest, to be $386,326.83. The magistrate further concluded that Lews Construction's *Page 7 
business damage claim was for events occurring subsequent to the termination of the option and that they were too speculative.
 {¶ 20} The magistrate then considered appellant's damages; he stated that appellant was entitled to reimbursement for only the development expenditures. In reaching the amount owed, the magistrate noted that he did not find appellant's testimony about expenditures to be credible. The magistrate found that appellant's development expenditures were $380,030.47, he then subtracted the $135,000 appellant received from the lot sale for a total recovery of $245,030.47.
 {¶ 21} The magistrate next determined that offsetting the amount appellant was entitled to recover from the amounts he owed to Home Port was the appropriate method. In so finding, the magistrate noted that the continued, future monitoring of the sale of boathouses was unduly burdensome and impractical. The magistrate then entered judgment in favor of Home Port in the amount of $121,298.10.
 {¶ 22} On September 19, 2007, the trial court adopted the magistrate's decision. This appeal followed.
 {¶ 23} Appellant now raises the following four assignments of error:
 {¶ 24} "1. Did the trial court commit reversible error in applying an offset of Plaintiffs/Appellees claimed damages against Defendant/Appellants development expenditures to entering judgment in favor of Plaintiff/Appellee Home Port in the amount of $121,298.10? *Page 8 
 {¶ 25} "2. Did the trial court commit reversible error in finding that Defendant/Appellant Lance C. Warner's damages were $264,028.73 rather than $512,203.85?
 {¶ 26} "3. Did the trial court commit reversible error in refusing to recognize that Plantiffs/Appellees Home Port, Inc. had recovered the balance of the Option Price ($90,000) when it adjusted its profit from the sales of several lots as reflected on Plaintiffs' Exhibits 18 and 20?
 {¶ 27} "4. Did the trial court commit reversible error by assessing an additional penalty against Defendant/Appellant Lance C. Warner for his failure to exercise the option when it found that he was not entitled to be reimbursed $53,860.79 for payment of income taxes for Thomas A. Byington and David Stearns, $53,070.78 [operating expenses] and marketing expenses of $10,158.46?"
 {¶ 28} Appellee/cross-appellant Home Port raises the following assignments of error:
 {¶ 29} "1. The trial court erred in not including as damages to plaintiff $20,166.99 in interest and penalties for delinquent real estate taxes which resulted from defendant's failure to pay more than $175,000 in obligations he owed as of the date of his breach of the parties' contract.
 {¶ 30} "2. The trial court erred in offsetting against plaintiff's damages for defendant's breach of contract all sums paid by defendant for construction costs to the date of his breach when defendant was only to be reimbursed for his advances out of the *Page 9 
net proceeds of sales of lots or boathouses on which his funds had been expended, and in calculating the interest owed to defendant on the unreimbursed construction costs advanced by him."
 {¶ 31} In appellant's first assignment of error, he argues that the trial court erroneously offset the amount it determined appellant owed under the contract by the amount of paid reimbursable expenses. Conversely, Home Port contends that appellant was properly found to be liable for the damages stemming from his October 1, 2001 termination letter.
 {¶ 32} At the outset we note that upon review of a trial court's judgment following a bench trial, an appellate court is "`guided by the presumption' that the trial court's findings are correct." Patterson v.Patterson, 3d Dist. No., 2005-Ohio-2254, ¶ 26, quoting Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. "Accordingly, a judgment supported by some competent, credible evidence will not be reversed on appeal unless it is against the manifest weight of the evidence." Id., citing Seasons Coal Co. and C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.3d 279; App. R. 12(C). Further, a reviewing court "will not disturb a decision of the trial court as to a determination of damages absent an abuse of discretion." Roberts v. U.S. Fid. Guar. Co.,75 Ohio St.3d 630, 634, 1996-Ohio-101, citing Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 33} Upon review, we find that the trial court abused its discretion when it found that Home Port was entitled to offset the amounts it claimed were owed under the contract by the amounts paid by appellant prior to his termination of the option. *Page 10 
Paragraph 5 of the contract provided that appellant was to be reimbursed for "[a]ll other amounts paid or advanced" by him. Further, had appellant paid those sums during the option, under the court's offset method and under the repayment provision of the contract, appellant would have been entitled to reimbursement of those expenditures.
 {¶ 34} Accordingly, we find that Home Port's damages totaled $135,398.66, the balance of the option price plus interest. Thus, subtracting this from the amount the court held was owed to appellant, $264,028.73 ($245,030.47, plus interest) Home Port owed appellant $128,630.07. Appellant's first assignment of error is well-taken.
 {¶ 35} In appellant's second assignment of error, he argues that the trial court erroneously calculated his damages to be $264,028.73, rather than $512,203.85. Appellant argues that the court erred when it deducted $135,000 for a payment that was made to appellant for a lot sale. Appellant further argues that the court erroneously failed to credit him $53,860.79 for the income tax payment, $53,037.78 for operating expenses, and $10,158.46 for marketing expenses.
 {¶ 36} Regarding the damages calculation, the trial court noted that, at trial, appellant initially testified that his total reimbursement expenses were 387,603.43; after a recess, he testified that the expenses were $632,087.50. The court concluded that $380,030.47, as testified to by Frank Moscioni, was the correct amount and that the amount had not been reduced by the $135,000 payment made to appellant. Upon review, we cannot say that the trial court erred in making this calculation. *Page 11 
 {¶ 37} Appellant next argues that the sum of $53,860.79 for the tax payment should have been credited to him. There is nothing in the contract that indicated that appellant was entitled to reimbursement of this amount. Regarding the operating expenses of $53,037.78, the parties specifically eliminated the paragraph providing reimbursement for such expenses; thus, appellant was not entitled to a credit of the amount. We further find that under the contract, appellant was not entitled to reimbursement of the marketing expenses. Appellant's second assignment of error is not well-taken.
 {¶ 38} Appellant's third assignment of error disputes the trial court's finding that the $90,000 balance owed on the option price was not credited against the net proceeds from the sale of lots 133 and 134. Appellant bases the argument on Home Port's exhibit showing the net proceeds from the sale of lots constructed during the option period.
 {¶ 39} Upon review, we cannot say that the trial court abused its discretion when it concluded that the subtraction of the $90,000 balance on Home Port's exhibit was simply an accounting of amounts owed and did not reflect an actual reduction of the net proceeds from the sales that appellant would have been entitled to. Appellant's third assignment of error is not well-taken.
 {¶ 40} In appellant's fourth and final assignment of error, he contends that the trial court erred when it found he was not entitled to be reimbursed $53,860.70 for income taxes, $53,070.78 for operating expenses, and $10,158.46 for marketing expenses. With regard to the income taxes payment, paragraph 4(C) of the option contract provided: *Page 12 
 {¶ 41} "All additional income taxes to be incurred by shareholders of Grantor, which are estimated to be a total of Eighty Thousand Dollars ($80,000), as a consequence of Grantor converting its tax accounting to the cash method at Grantee's request in order to permit Grantor to sell the Property on an installment sale basis if the parties so decide at the time Grantee exercises the Option to Purchase herein granted, * * *."
 {¶ 42} At the end of the paragraph, the following was handwritten: "Said amount shall apply to purchase price." This amendment was dated and initialed by the parties.
 {¶ 43} Upon review, we cannot say that the trial court erred when it found that appellant was not entitled to reimbursement for the income tax payment. The paragraph states that the accounting change was made at appellant's request. Further, the section specifically states that the amount would be credited against the purchase price. Because appellant did not purchase the property, he was not entitled to recoup the tax amount that he paid.
 {¶ 44} Regarding the operating expenses, paragraph 5(B) originally provided that they were to be repaid to appellant in the event that the option was not exercised. However, as set forth above, hash marks were drawn through the entire paragraph and a handwritten note next to the paragraph stated: "Paragraph deleted 10/24/20[00]." It was initialed by appellant, Stearns, and Byington. Accordingly, we find that the contract did not provide that appellant would be reimbursed for operating expenses and that the parties did not intend for such reimbursement We further find that the trial court did not *Page 13 
err when it held that appellant was not entitled to reimbursement of the marketing expenses. Appellant's fourth assignment of error is not well-taken.
 {¶ 45} In its cross-appeal, Home Port's first assignment of error contends that the trial court erred when it failed to include as damages $20,000 in interest and penalties that Home Port incurred in delinquent real estate taxes. Home Port alleged that the damages stemmed from appellant's failure to pay the amounts owed on the date of the breach of the option contract. It is undisputed that the real estate taxes were current on the date the option was terminated. Upon review, we agree with the trial court's conclusion that this consequential damage was neither enumerated in the contract nor contemplated by the parties. Home Port's first assignment of error is not well-taken.
 {¶ 46} In Home Port's second assignment of error, it disputes the method by which the court offset its damages by all sums paid by appellant for development expenses. Home Port contends that, under the contract, appellant was only entitled to be reimbursed from the net proceeds from the sale of any lot or boathouse for which his funds had been used. Under this theory, Home Port contends that appellant was only entitled to be reimbursed $50,802.22 from the sale of lots 132 and 133.
 {¶ 47} In determining that the offset method was the most practicable, the trial court noted the difficultly in monitoring future sales and payments. The court further commented that, despite its request, the parties had failed to address the offset issues in their post-trial briefs. Upon review, we cannot say that the trial court abused its *Page 14 
discretion in so finding. Frankly, we find the trial court's efforts in this complex case should be praised. Home Port's second assignment of error is not well-taken.
 {¶ 48} On consideration whereof, we find that substantial justice was not done appellant/cross-appellee and the judgment of the Erie County Court of Common Pleas is affirmed, in part, and reversed, in part. Pursuant to App. R. 12(B), this court enters judgment in favor of appellant/cross-appellee, Lance Warner, and against appellee/cross-appellant, Home Port Developers, Inc., in the sum of $128,630.07. Appellee/cross-appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, P.J., William J. Skow, J., Thomas J. Osowik, J., CONCUR.
[1] The complaint was amended to include Edwin "Mick" Coles, a potential developer, as a defendant. The claims against Coles were subsequently dismissed.
[2] The option term was originally for one-year but was extended to two years at appellant's request.
[3] As discussed infra, there is a question as to whether Home Port recouped the sum by adjusting its net profit from the sale of several lots. *Page 1