DECISION AND JUDGMENT ENTRY
Executive Transport Service appeals the judgment of the Vermillion Municipal Court that found King Thompson was entitled to unpaid wages for a delivery of goods. Because we conclude that the trial court did not err in its determination and the decision was supported by the manifest weight of the evidence, we affirm.
Thompson sued in the Vermillion Municipal Court to recover wages of $1,462 and costs from Executive Transport for driving to California and back. After a bench trial, the court awarded Thompson the entire sum with costs and interest from the date of judgment of January 24, 2003. Executive Transport appeals from this judgment entry.
 Assignments of Error
"1. The judgment in favor of the Plaintiff is against the manifest weight of the evidence."
"2. The court erred by failing to consider that Plaintiff's own breach of contract estops him from asserting a claim against Defendant."
"3. The court erred by failing to consider Defendant's assertion of lost business."
"4. The court erred in its calculation of wages due Plaintiff by not deducting the mileage of Plaintiff's frolic."
At trial, Thompson and Chuck Wyatt, the owner of Executive Transport, were the only witnesses. The record shows that Executive Transport hired Thompson, a trucker with 53 years of commercial driving experience and a good commercial driving record, to drive to California to deliver a shipment of goods for Forward Air. Thompson testified that he had expected another driver to be with him because of the distance and amount of time required for the job, but Executive Transport Service told him he would be driving solo. Instead, the company provided him with a cellular phone and instructed him to call two to three times a day on his progress. The phone did not work once Thompson reached Nebraska. Because he had not called in, Thompson was deemed to have taken off with the shipment.
Thompson finally contacted Executive Transport after his fuel card was cut off. He explained he was routed through the Donner Pass, an unsafe area because he did not have a trailer. Testimony then differed between Thompson and Wyatt about whether the truck had chains and whether that would have made a difference. As Thompson drove through the Donner Pass, his truck was fined for being overweight. Thompson testified he was not seeking reimbursement for this fine or the ones he incurred in California, as he believed that they were his own responsibility.
When Thompson reached his San Francisco destination, he was directed to drive to Sacramento. The confusion over routing caused the trip to take nine hours instead of six, as expected. Executive Transport called the police and had the truck stopped. Thompson was then ordered by the company to "sit tight" for a week in Sacramento while it worked things out concerning the load.
Eventually, Thompson started back to Ohio. He testified that because of his earlier troubles through the Donner Pass, he took a southern route back to Ohio. Executive Transport, in the meantime, dispatched a driver, Chuck Scott, to intercept him in Oklahoma City, and Thompson was ordered to get back to Ohio as quickly as possible. For the rest of the trip, Thompson and Scott shared driving responsibilities. Thompson was never fired.
Upon his return, Thompson was not paid by Executive Transport. He testified he was told the reason for his nonpayment was that the Forward Air contract had been lost. Thompson was blamed for late delivery, failure to call in, and the one week delay in Sacramento. Thompson refuted the allegations, stating he had delivered the load in a timely manner and was paying his own fines. Log records were entered into evidence and corroborated Thompson's testimony.
In its findings of fact and conclusions of law, the trial court found Thompson to be a credible witness "who acknowledged his problems with the cell phone, took responsibility for the fines accrued during the trip, made best efforts to meet a difficult timetable as a single driver, and presented his daily log without challenge from the Defendant." The trial court further stated that Thompson had substantially complied with the contract, which he performed to the best of his ability, and that he was due payment for his services. With regard to Executive Transport, the court stated it "found that Defendant produced no documents or witnesses verifying that [the company] lost a client over this transaction. Defendant produced no written contract between the business and the driver regarding routes, timetables, the payment of fines, or standards of the business regarding the number of hours a driver may drive a day, payment of costs and expenses during `down' time, or any of the issues that were critical to support [the company's] case for non-payment of the Plaintiff. Also, the second driver, Mr. Scott, was not present to dispute the driving records submitted by Plaintiff." Executive Transport now appeals.
 First Assignment of Error
In the first assignment of error, Executive Transport asserts that the court's findings were not supported by the "overwhelming weight of the evidence." No law is stated for this proposition; instead, it is stated that: 1) Thompson did not call as much as he should; 2) Issues arose in California concerning Thompson and the shipment; 3) Thompson did not take the correct route back to Ohio; 4) Another driver had to be flown out to bring the truck back; and 5) A customer was lost as a result of this.
A decision of the judge or jury will not be reversed as being against the manifest weight of the evidence in a civil case as long as the decision is supported by some competent, credible evidence going to each of the essential elements of the case.C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, at the syllabus; Vogel v. Wells (1991), 57 Ohio St.3d 91,96. Where a decision turns upon credibility of testimony, and there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference is to be given to those findings and conclusions. Myers v. Garson
(1993), 66 Ohio St.3d 610, 614. Here, the trial court was in the best position to view the witnesses, observe their demeanor, gestures, and voice inflections, and then use these observations in weighing credibility. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
The trial court cited to the rule relating to substantial compliance with a contract. Where a party has substantially performed its contract obligations, the party is entitled to payment under a contract. Zolg v. Yeager (1997),122 Ohio App.3d 269, 275; Cleveland Neighborhood Health Serv., Inc. v.St. Clair Builders Inc. (1989), 64 Ohio App.3d 639, 644. If there has been substantial compliance, the party has not breached the contract. Bumbera v. Hollensen (Mar. 17, 2000), Ottawa App. No. OT-99-064; Ohio Farmer's Ins. Co. v. Cochran (1922),104 Ohio St. 427, paragraph two of the syllabus. Application of the doctrine of substantial performance is to be confined to cases where the party has made an honest or good faith effort to perform the contract terms. Ashley v. Henahan (1897),56 Ohio St. 559, paragraph one of the syllabus. That is what occurred here.
Thompson was hired to drive a shipment of goods to California. He did this despite not having another driver to share in the driving responsibilities, even though earlier expectation was that he would. The record reflects that Thompson did not call Executive Transport on the cell phone provided because the phone stopped working while Thompson was in Nebraska. The week's delay back to Ohio was caused by the company's telling him to "sit tight" in Sacramento. Thompson testified that after his experience with the Donner Pass on the way out to California, he took an alternate route back to Ohio specifically to avoid his earlier problems. No evidence was brought forth that it was improper for him to take the more southern route back to Ohio. In fact, no evidence was presented that he was fired from his job as a driver when Executive Transport sent Chuck Scott, another driver, out to Oklahoma to ride with Thompson back to Ohio. The log books submitted to the trial court show that Thompson only requested pay for actual drive time; his fines and extra time were not included.
It is clear from viewing the entire record that the trial court's decision was supported by some competent, credible evidence; thus, it was not against the manifest weight. "Substantial performance of a contract is interpreted to mean that mere nominal, trifling, or technical departures are not sufficient to break a contract, and that slight departures, omissions and inadvertences should be disregarded." Kichler's,Inc. v. Persinger (1970), 24 Ohio App.2d 124, 126. Thompson substantially performed on his contract with Executive Transport Service by delivering the load; therefore, the first assignment of error is not well-taken.
 Second Assignment of Error
The second assignment of error argues that Thompson was estopped in going forward with his suit because he breached his contract with Executive Transport under the "clean hands doctrine" expressed in Marinaro v. Major Indoor Soccer League
(1991), 81 Ohio App.3d 42, 45. That case is inapplicable here, since nothing in the record reflects that Thompson breached his contract. Executive Transport's conclusory allegations are unsupported and, consequently, of no merit. See Amos SuburbanNewspapers v. Platt (May 17, 1996), Montgomery App. No. 15431 (estoppel not proved at trial because defense only presented conclusory allegations in support of argument). Therefore, the second assignment of error is found not well-taken.
 Third Assignment of Error
In the third assignment of error, Executive Transport argues that the trial court neglected to consider the company's loss of business. Wyatt testified that his company had lost the Forward Air contract. No one testified from Forward Air, the customer for whom delivery was made. We refuse to infer that Thompson's actions were a reason for canceling the contract with Executive Transport when no evidence was presented to that effect. SeeTrim-Line of Toledo v. Carroll (Jan. 23, 1987), Lucas App. No. L-86-176 (no direct evidence was presented to show lost profits);Parasson Corporation v. Nicholas (June 1, 1978), Summit App. No. 8756 (no evidence was presented to substantiate loss of business). Therefore, the third assignment of error is found not well-taken.
 Fourth Assignment of Error
The fourth assignment of error argues that Thompson was on a "frolic" when he took the more southern route home. This argument, which raises a tort issue, is not proper in a contract action. Even if it were, the requirements for actions beyond the scope of employment were not met. Lime City Mut. Ins. Assn. v.Mullins (1992), 83 Ohio App.3d 517, 524; Ludwig v. Niccum
(Oct. 18, 1999), Williams App. No. WM-99-004.
Executive Transport failed to provide any physical evidence or testimony from someone else with knowledge of any employment deviation on Thompson's part. No contract was admitted into evidence that dictated what route Thompson was to take back to Ohio. Chuck Scott, the driver who met Thompson in Oklahoma, did not testify. Executive Transport merely states that the trial court miscalculated the appropriate mileage that Thompson legitimately traveled. Thompson testified that he took the alternate route to avoid his former problems at the Donner Pass. His actions, therefore, do not constitute any conduct that would keep him from being paid under contract law. The fourth assignment of error is, therefore, found not well-taken.
On the basis of the foregoing, we find that the trial court's decision was supported by competent, credible evidence. The trial court's decision was not against the manifest weight. As substantial justice was done to appellant, the judgment of the Vermillion Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
Richard W. Knepper, J., Judith Ann Lanzinger, J. and Arlene Singer, J., concur.