[Cite as *Griffin Contracting & Restoration v. McIntyre*, 2018-Ohio-3121.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


GRIFFIN CONTRACTING AND
RESTORATION,                                                :

                                    :        CASE NO.  CA2017-11-058

       Plaintiff-Appellee,

                                      :        O P I N I O N
                                                     8/6/2018

      - vs -                              :

                                        :

SUSAN McINTYRE, et al.,                                   :

       Defendants-Appellants.                        :

                                        :


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2016CVH00948


Maria K. Ante, 7000 Houston Road, Suite 38, Florence, KY 41042, for plaintiff-appellee

Becker & Cade, Dennis A. Becker, 526 A Wards Corner Road, Loveland, Ohio 45140, for defendants-appellants


       **PIPER, J.**

       **{¶ 1}**  On August 4, 2015, plaintiff-appellee, Griffin Contracting and Restoration, LLC ("Griffin"), filed a complaint in the Small Claims Division of the Clermont County Municipal Court asserting a claim for breach of contract. Defendants-appellants, Susan and Jack McIntyre ("McIntyres"), answered and filed counterclaims asserting a right to rescind the contract pursuant to the Home Solicitation Sales Act ("HSSA"), and alternatively, rescission

and damages pursuant to the Consumer Sales Practices Act ("CSPA"). The McIntyres also moved to transfer the case to the Clermont County Court of Common Pleas. The municipal court granted the motion and transferred the case to the common pleas court. The case proceeded to trial on October 2, 2017, and the trial court found in favor of Griffin on its breach of contract claim. The trial court further found the HSSA inapplicable. However, the trial court did find several CSPA violations and awarded damages to the McIntyres. The trial court offset the parties' damages with the result being a judgment in favor of the McIntyres.

{¶ 2} The McIntyres appeal the trial court's decision awarding them damages for less than the amount they sought to recover by way of their counterclaims against Griffin. Additionally, the McIntyres also appeal the trial court's findings with respect to their counterclaims brought pursuant to the HSSA and CSPA.

{¶ 3} On July 24, 2014, the McIntyres' home sustained fire and smoke damage. The fire damage was contained to the master bathroom where an electrical outlet caught fire. The master bathroom, master bedroom, and walk-in closet, all incurred smoke damage. Susan contacted the family's home insurer, Pekin Insurance ("Pekin"), and made a claim. Pekin assigned Jessica Henson, a claims adjuster, to administer said claim. Later that afternoon, Henson responded to the McIntyres' residence to investigate the claim. Henson testified that she provided Susan the names of two contractors to initiate repairs. Henson attempted to call the first contractor, but nobody answered. Henson then contacted Griffin. She placed the call from her cell phone, while still present at the McIntyre residence. It is unclear whether, and to what extent, Susan participated in the call to Griffin. In her deposition, Susan testified that Henson made all the phone calls. However, Susan testified at trial that she was unsure if Henson's cell phone was on speakerphone.

{¶ 4} A representative from Griffin responded to the McIntyre residence shortly after Henson departed. The Griffin representative met with Susan. The record does not reflect

the substance of this conversation. Afterward, Susan signed an Emergency Service Authorization, electing to have Griffin initiate emergency repairs.

{¶ 5} Griffin prepared three separate estimates, each specific to an individual phase of the repair. First, an estimate for the "contents packout" phase in the amount of $4,757.90. Second, an estimate for the "mitigation" phase in the amount of $2,672.49. Third, an estimate for the "rebuild" phase in the amount of $6,948.18, which was later adjusted to $7,198.18 due to an additional $250 in incidentals. Pekin approved the three estimates and paid insurance proceeds to the McIntyres for the "contents packout" and "mitigation" phase estimates. In turn, the McIntyres paid Griffin. Therefore, there is no dispute regarding the "contents packout" and "mitigation" phases of the repair process.

{¶ 6} In addition to the Emergency Service Authorization, Susan signed an Insurance Work Authorization/Contractor Agreement with Griffin. Pekin approved the "rebuild" phase estimate and issued a check to the McIntyres for $4,211.13. The McIntyres paid Griffin the $4,211.13. On January 28, 2015, Pekin issued a check to the McIntyres for $2,987.05, representing the remaining balance due to Griffin. The McIntyres made no further payments to Griffin.

{¶ 7} Susan testified at her deposition that she received documents containing drawings and dimensions; however, she did not recall seeing estimate figures. In her trial testimony, she did not recall seeing any estimates. Kevin Carpenter, a project manager for Griffin, testified that he prepared the "rebuild" phase estimate and provided it to Henson on August 4, 2017, a week before Susan signed the Insurance Work Authorization. Carpenter further testified that he received an e-mail from an employee of Pekin, which stated the employee had reviewed the estimate with Susan.

{¶ 8} Henson testified that Griffin performed all work contracted to be completed and that Griffin provided a Certification of Completion of Repairs. This certification indicated that

"all necessary repairs * * * had been completed in a workmanlike manner and that no materials, labor or [the] like liens have been or will be incurred as a result of labor performed or materials used." The McIntyres signed this document. Likewise, Susan signed a Customer Satisfaction Survey, which indicated her "overall impression" of the work was "very good." The survey form further indicated Susan answered "yes" in response to questions regarding the following: whether (1) the estimator was prompt, (2) the estimator clearly explained the process of the work done, (3) Griffin employees were polite, courteous, and helpful, (4) production staff was neat, knowledgeable, and professional, (5) the work was done to her satisfaction, (6) she would recommend Griffin to her friends and family, and (7) Griffin may use her as a reference. Later at trial, Susan testified her impression of the work performed was "terrible." Susan acknowledged signing the survey, but disputed whether she checked "yes" to the seven answer boxes.

{¶ 9} The trial court found in favor of Griffin in the amount of $2,737.05 on its breach of contract claim. This amount represented the $2,987.05 previously withheld less the $250.00 for incidentals. With respect to the McIntyres' HSSA counterclaim, the trial court found the HSSA was inapplicable because there was "insufficient evidence to conclude Griffin solicited anything from the McIntyres." The trial court determined that the McIntyres requested Griffin's services, accepted them, and offered no complaints until months after the work was completed. The trial court stated that, pursuant to the HSSA, it would be "grossly inequitable" to permit the McIntyres to rescind the contract, while retaining the benefits therefrom. Even had Griffin violated the HSSA, the resulting damages would equal $0.00. In regard to the McIntyres' CSPA counterclaim, the trial court found that the work performed and services rendered constituted a "consumer transaction" and "that Griffin had engaged in deceptive acts." The trial court found Griffin violated the CSPA in the following ways:

    (1)  by failure to provide written notice to the McIntyres of their right

- 4 -

to cancel the transaction, as required by R.C. 1345.23 [$200.00 in statutory damages];

(2) by failure to provide the written notice concerning estimates required by [Ohio Adm.Code] 109:4-3-05(A)(1) [$200.00 in statutory damages]; [and]

(3) representing that repairs had been made or services performed when they have not, pursuant to [Ohio Adm.Code] 109:4-3-05(D)(9). Specifically, by demanding for the full estimate amount, including fees for the replacement of blinds in the bedroom and closet ($76.82[*]2 = $153.64 actual damages), removal and replacement of bathroom floor underlayment ($163.37 actual damages), removal of vinyl floor covering * * * ($53.96 actual damages), and six months of storage when only [three] months was provided ($892.50[/]2 = $446.25 actual damages), Griffin is representing that said work was done, when the Court finds it was not.

{¶ 10} The trial court found these violations resulted in actual damages of $817.22. It trebled the damages and awarded $2,451.66, plus the $400.00 for statutory damages. Thus, the trial court awarded total damages of $2,851.66. The trial court offset the CSPA damages award with the damages award to Griffin on its breach of contract claim. Thus, the trial court entered judgment in favor of the McIntyres in the amount of $114.61.

{¶ 11} The McIntyres timely appealed the judgment of the trial court.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED IN CONCLUDING THAT THE HOME SALES SOLICITATION ACT DID NOT APPLY TO THE TRANSACTION BETWEEN GRIFFIN CONTRACTING AND THE MCINTYRES.

{¶ 14} The McIntyres contend the trial court erred in finding the HSSA inapplicable based on insufficient evidence that Griffin engaged in a "solicitation" of the sale. The McIntyres further argue the trial court erred in finding it would be "grossly inequitable" to require Griffin to return all payments, while allowing the McIntyres "to retain the benefit of the services, work and materials provided by Griffin."

{¶ 15} The essence of the McIntyres' first argument pertains to the trial court's weighing of the evidence and its judgment as to the credibility of the witnesses. Therefore, we construe this argument as asserting the trial court's decision finding the HSSA inapplicable was against the manifest weight of the evidence. *See Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison No. CA2016-12-032, 2017-Ohio-7213, ¶ 8. "The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case." *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 8, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. Thus, in considering a manifest weight challenge, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20. A judgment will not be reversed as being against the manifest weight of the evidence where the "judgment is supported by some competent, credible evidence going to all essential elements of the case." *Ashburn v. Roth*, 12th Dist. Butler Nos. CA2006-03-054 and CA2006-03-070, 2007-Ohio-2995, ¶ 26, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶ 16} "In order for the HSSA to cover a transaction, it must be a home solicitation sale as defined by the Act." *Paul Davis Restoration of Cleveland Metro West v. Karaman*, 8th Dist. Cuyahoga No. 84824, 2005-Ohio-4017, ¶ 14. R.C. 1345.21(A) defines a "home solicitation sale" as

> * * * a sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller

or a person acting for the seller, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business.

{¶ 17} It is undisputed that Griffin is a "seller," the McIntyres are "buyers," and Griffin performed "consumer services," pursuant to the HSSA. Rather, the issue presented is whether Griffin "solicited" a sale of its services to the McIntyres. The McIntyres assert the trial court erred in finding Griffin did not engage in a solicitation of the sale because the original phone call included Susan's participation. Further, because of this call, Griffin responded to the McIntyre residence where a Griffin representative engaged in further discussion with Susan, which culminated in Susan signing the Emergency Service Authorization. Therefore, the McIntyres assert Griffin engaged in a personal solicitation of the sale.

{¶ 18} The trial court found the HSSA did not apply to the transaction between the McIntyres and Griffin. In so doing, it relied on a Second District opinion involving similar factual circumstances. *See Luckoski v. Allstate Ins. Co.*, 2d Dist. Montgomery No. 25621, 2013-Ohio-5460.

{¶ 19} In *Luckoski*, homeowners suffered a loss due to a fire. *Id.* at ¶ 2. A claims adjuster from the homeowners' insurance company informed the homeowners it had a list of preferred contractors, but that the homeowners were free to use any contractor of their choosing. *Id.* at ¶ 18. The claims adjuster then contacted a contractor from the preferred contractor list. *Id.* at ¶ 2. The contractor responded to the residence, explained to the homeowners that he was a part of the insurer's program, but that the homeowners could arrange for a contractor of their choosing to make the repairs. *Id.* at ¶ 18. The homeowners signed an emergency work authorization and selected the contractor to perform the repairs. *Id.* The repair did not proceed to the homeowners' satisfaction and the homeowners filed a complaint, which included a claim brought pursuant to the HSSA. *Id.*

{¶ 20} The trial court found that the HSSA did not apply to the transaction because the contractor's "express purpose was not to make a sale but to secure the [homeowners'] residence following the fire." *Id.* at ¶ 42. The trial court found the contractor did not solicit the repair work, but rather, responded to being dispatched by a claims adjuster for the homeowners' insurance company. *Id.* Upon arriving at the residence, the contractor did not engage in solicitation. *Id.* Rather, the contractor provided information regarding the program, which permitted the homeowners to select any contractor for the repair. *Id.* at ¶ 42-43. The homeowners, aware of this information, elected to have the contractor complete the repair work. *Id.* at ¶ 43.

{¶ 21} Absent from the record is any indication Griffin engaged in a solicitation of the sale. Like *Luckoski*, a claims adjuster from Pekin informed the McIntyres they were free to select any contractor, but also provided them with preferred options. The claims adjuster contacted two of the preferred options on behalf of the McIntyres. As the contractor did in *Luckoski*, Griffin answered the phone call and responded to the residence to secure it following the fire and smoke damage. A representative from Griffin arrived and engaged in a discussion with Susan. The content of this conversation is not known. The McIntyres ultimately selected Griffin to perform the necessary repair work. Susan signed an Emergency Authorization and Griffin began the required work.

{¶ 22} The HSSA is designed to protect the consumer against high-pressure sales tactics occurring in the home. *Altek Environmental Serv. Co. v. Harris*, 5th Dist. Stark No. 2008 CA 00138, 2009-Ohio-2011, ¶ 32. Based on the limited and inconsistent evidence presented to the trial court, this case simply does not fall within the scope of the HSSA. Rather, the McIntyres were presented with contractor options, informed of the damage their residence incurred, and hired Griffin. This evidence does not establish Griffin engaged in a personal solicitation.

{¶ 23} The only evidence presented pertaining to the discussion between Susan and Griffin is Susan's testimony she was upset on the day the damage occurred. While homeowners may unsurprisingly be distraught after experiencing significant damage to their residence, being distraught or upset alone does not mean that any conversation which occurred had to be a solicitation. The McIntyres further argue that anytime a homeowner enters such a contract, it is because of a "solicitation." We find this argument unpersuasive and note the trial court heard evidence that Susan relied upon the claims adjustor to do what was right for them. Susan testified that "she put the ball in [the claims adjustor's] court." Significantly, the trial court also discounted Susan's testimony after identifying multiple inconsistencies, and we defer to the trial court on credibility determinations. *See State v. Glover*, 12th Dist. Fayette No. CA2016-11-016, 2017-Ohio-7360, ¶ 42.

{¶ 24} Noting the facts in *Luckoski* are markedly similar to the facts of this case, the trial court applied the holding of *Luckoski* and found there was insufficient evidence to conclude Griffin solicited anything from the McIntyres. For the foregoing reasons, we find the trial court's decision finding the HSSA inapplicable to this case is not against the manifest weight of the evidence.

{¶ 25} We next turn to the McIntyres' argument the trial court erred in finding that had a home solicitation sale occurred, it would be "grossly inequitable" to require Griffin to return all payments, while allowing the McIntyres "to retain the benefit of the services, work and materials provided by Griffin." The McIntyres contend Griffin failed to provide notice of their 3-day right to cancel the contract, in violation of the HSSA and CSPA. Based on this failure, the McIntyres argue they should have been permitted to rescind the contract and should have received as damages refund of all payments under the contract.

{¶ 26} Pursuant to the HSSA, each home solicitation sale must be evidenced by a written agreement. R.C. 1345.22 and 1345.23. Further, the writing must include a statement

of the buyer's right to cancel under the contract until midnight of the third business day after the day on which the buyer signs the contract. *Id.* If the agreement fails to include a statement of the buyer's right to cancel, then the buyer's right to cancel does not expire. R.C. 1345.23(C). Upon the buyer exercising the right to cancel, the seller must refund all payments made under the contract to the buyer. R.C. 1345.23(D)(4)(a). Here, Griffin does not dispute that it did not provide the McIntyres with the required notice of their right to cancel.

{¶ 27} We note that the failure to comply with the HSSA constitutes a deceptive act or practice in connection with a consumer transaction in violation of the CSPA. R.C. 1345.02 and 1345.21 thru 1345.27. Thus, any violation of the HSSA is a violation of the CSPA. *Paul Davis Restoration*, 2005-Ohio-4017 at ¶ 14, citing R.C. 1345.28. Pursuant to R.C. 1345.09, when a violation of the CSPA occurs, a consumer may elect to rescind the contract or to sue for three times the amount of the actual damages. Thus, "[o]nce the consumer has chosen to rescind, or cancel, the contract, he is not entitled to recover damages under the [CSPA]." *Clemens v. Duwel*, 100 Ohio App.3d 423, 433 (2d Dist.1995). A consumer cannot rescind in one context and still claim a right to enforce in another. *Id.*

{¶ 28} Furthermore, "[t]he HSSA is intended to be a 'shield' for the consumer, not a 'sword.'" *Kamposek v. Johnson*, 11th Dist. Lake No. 2003-L-124, 2005-Ohio-344, ¶ 33. In such a situation, the trial court has discretion to make an equitable determination of damages. *Id.* Thus, we will not disturb the trial court's determination absent an abuse of discretion. *White v. Allstate Ins. Co.*, 8th Dist. Cuyahoga No. 92648, 2009-Ohio-5829, ¶ 17, discussing *Kamposek* at ¶ 33. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 29} The McIntyres sought rescission under the HSSA and alternatively damages

and rescission under the CSPA. They did not make an election as to which remedy they were pursuing at trial. R.C. 1345.09(C)(1) provides that "in any action for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it * * *." The trial court ultimately awarded damages pursuant to the CSPA and exercised its discretion in finding rescission under the HSSA would be grossly inequitable. The trial court noted the McIntyres did not elect to rescind until after Griffin completed the work and had filed a complaint to seek the balance it felt owed for the work performed. Additionally, the trial court noted the McIntyres expressed satisfaction with the work via a Customer Satisfaction Survey and a Certification of Completion of Repairs. The trial court further noted "the McIntyres requested the service, accepted it, and offered no complaints for months after the work and services by Griffin were complete."

{¶ 30} After a thorough review of the record, we find the trial court did not abuse its discretion in finding that it would be grossly inequitable to permit the McIntyres to rescind the contract. The record contains ample evidence to support its findings that the McIntyres elected to have Griffin perform the work and services and offered no complaints for months after the work and services were complete. In fact, Susan indicated on the Customer Satisfaction Survey that her overall impression of Griffin's work was "very good." Further, the Certification of Completion of Repairs, signed by the McIntyres, indicated that all necessary repairs were completed in workmanlike manner. As the trial court found, it would be inconsistent with the purpose of the protections provided by the HSSA to permit the McIntyres to rescind the contract months after completion yet receive the full contract price and enjoy the benefits of the completed contract. *See Kamposek* at ¶ 33 (cautioning against unjust scenarios where a buyer attempts to take advantage of a seller that failed to provide notice of the right to cancel). Based on this evidence, we find the trial court did not abuse its

discretion in finding that had the HSSA applied, rescission would have been grossly inequitable and damages would equal $0.00.

{¶ 31} Accordingly, the McIntyres' first assignment of error is overruled.

{¶ 32} Assignment of Error No. 2:

{¶ 33} THE TRIAL COURT ERRED IN ITS AWARD AND CALCULATION OF DAMAGES UNDER THE CONSUMER SALES PRACTICES ACT.

{¶ 34} The McIntyres assert the trial court erred in its award and calculation of damages pursuant to the CSPA in three respects. First, the McIntyres argue the trial court erred in finding they failed to meet their burden of proof with respect to certain CSPA violations. Second, the trial court erred in offsetting its award of damages for CSPA violations with the damages it awarded Griffin on its breach of contract claim. Third, the trial court erred in its decision to not award attorney fees to the McIntyres.

{¶ 35} The arguments posed by the McIntyres require this court to apply two different standards of review. The McIntyres' first argument asks this court to weigh the evidence differently than the trial court; therefore, we will conduct a manifest weight of the evidence review. *Dunn*, 2016-Ohio-641 at ¶ 8, citing *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179 at ¶ 17. The next two arguments regard the trial court's award of damages, which we review for an abuse of discretion. *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634 (1996) ("[w]e will not disturb a decision of the trial court as to a determination of damages absent an abuse of discretion"); *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991) (stating a trial court's determination whether to award attorney fees based on a CSPA violation is discretionary, and therefore, is reviewed for an abuse of discretion).

{¶ 36} The McIntyres contend the trial court erred by finding they failed to prove certain deceptive acts in violation of the CSPA. Specifically, the McIntyres assert Griffin committed the following deceptive acts constituting CSPA violations:

- Griffin failed to provide the McIntyres with a written estimate at the time of the initial face to face contact and/or prior to any restoration work being done.

The contract did not contain a statement advising the McIntyre[s] they were entitled to a written, oral, or no estimate.

- The contract did not contain a reasonable completion date;

- The contract did not contain a statement of the services to be rendered or an itemization of the repairs to be made;

- Griffin failed to inform the McIntyres they intended to employ sub-contractors;

- Griffin failed to provide the McIntyres with an itemized list of repairs to be performed or services rendered, the amount charged for labor and the identity of the individual performing the service.

The McIntyres also contend the trial court erred by not finding an additional deceptive act pursuant to Ohio Adm.Code 109:4-3-05(D)(9) because Griffin overcharged them to remove a mirror and to replace drywall in the bathroom. The McIntyres assert it is undisputed these deceptive acts occurred; therefore, the trial court's judgment finding the McIntyres failed to meet their burden of proof with regard to these asserted acts is against the manifest weight of the evidence. Whereas, Griffin asserts these alleged violations were highly disputed at trial and the trial court did not err in finding against said violations.

{¶ 37} Ohio Adm.Code 109:4-3-05(A)(1) provides, in pertinent part, that it

shall be a deceptive act or practice in connection with a consumer transaction involving the performance of either repairs or any service where the anticipated cost exceeds twenty-five dollars and there has been face to face contact between the consumer or the consumer's representative and the supplier or the supplier's representative, prior to the commencement of the repair or service for a supplier to:

- 13 -

(1) Fail, at the time of the initial face to face contact and prior to the commencement of any repair or service, to provide the consumer with a form which indicates the date, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated completion date and, if requested by the consumer, the anticipated cost of the repair or service. The form shall also clearly and conspicuously contain the following disclosures in substantially the following language:

"Estimate

* * *

_____ written estimate

_____ oral estimate

_____ no estimate"

**{¶ 38}** After thoroughly reviewing the record, it is clear the trial court awarded statutory damages after finding Griffin "fail[ed] to provide the written notice concerning estimates required by [Ohio Adm. Code] 109:4-3-05(A)(1)." Thus, the record demonstrates the trial court found this deceptive act occurred and awarded statutory damages accordingly. Therefore, the McIntyres' argument otherwise is clearly incorrect.

**{¶ 39}** The McIntyres next argue it is undisputed the remaining asserted deceptive acts occurred. However, the record and the briefs herein clearly demonstrate the asserted deceptive acts are disputed. The record contains conflicting testimony with respect to whether Griffin furnished written estimates for the three phases for which work was performed. The project manager testified regarding the program Griffin employs to create estimates and that he personally created the estimate for the third phase of the repair. He also testified regarding the three written estimates in the record, which depict drawings and dimensions and contain individualized repair line items and their corresponding cost. Additionally, the Emergency Service Authorization and Insurance Work Authorization both reference these estimates and were signed by Susan. However, Susan testified at trial she

never received the three estimates. In her deposition, Susan testified she had seen documents depicting drawings and dimensions but could not recall the specifics of the documents.

**{¶ 40}** While the record contains conflicting testimony regarding whether Griffin created, and provided to the McIntyres, written estimates containing the pertinent information at issue on appeal, we find the trial court's findings are not against the manifest weight of the evidence. Competent, credible evidence exists in the record that the estimates were created and contained the information at issue. Testimonial evidence conflicts as to whether Susan received the estimates as well as regarding the extent of the bathroom repair. However, as discussed above, the trial court discounted Susan's testimony because it was not convinced that Susan's recollection of events occurring nearly three years ago was completely accurate. *Glover*, 2017-Ohio-7360 at ¶ 42 (stating we defer to the trial court's determinations with respect to witness credibility). The trial court was in the best position to judge the witnesses and weigh their credibility. Therefore, we find the trial court did not clearly lose its way and create a manifest miscarriage of justice in finding the McIntyres "failed to prove other alleged deceptive acts."

**{¶ 41}** Next, we turn to the McIntyres' arguments with respect to damages. The McIntyres assert the trial court erred in its calculation of damages because (1) it offset the breach of contract and CSPA violation damages, (2) it miscalculated the actual damages of replacement blinds, and (3) erred in its decision to not award attorney fees.

**{¶ 42}** The McIntyres assert "if the CSPA is to have any deterrent effect, the items which Griffin charged and did not perform should have been deducted from any award made to Griffin." However, the McIntyres fail to cite any authority demonstrating the trial court acted unreasonably, arbitrarily or unconscionably, by offsetting damages. Rather, the trial court, by offsetting damages, did in fact award Griffin the actual damages for its breach of

contract claim with deductions for the trebled damages brought about by Griffin's deceptive acts. Therefore, the trial court did not abuse its discretion in this regard.

{¶ 43} With respect to the replacement blinds, the record reflects Griffin removed the damaged blinds, but failed to replace the blinds. The cost charged for the replacement blinds equaled $76.82. The trial court found Griffin violated Ohio Adm.Code 109:4-3-05(D)(9) by representing it performed repairs or services which it did not perform. Specifically, the trial court found Griffin committed a violation for demanding full payment of fees for the replacement of blinds in the bedroom and closet. The McIntyres' contention that the actual damages are $84.60 fails to acknowledge the inclusion of $7.78 in the blinds line item for removal, which Griffin performed. Thus, the trial court awarded the actual damages for replacement blinds of $76.82. Because the award of actual damages equaled the amount charged for the work that was not completed, the trial court did not abuse its discretion in its award.

{¶ 44} Finally, pursuant to R.C. 1345.09(F), a trial court may award attorney fees if the consumer "complaining of the act or practice that violated [the CSPA] has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith," or if the "supplier * * * knowingly committed an act or practice that violate[d the CSPA]." At issue is the trial court's finding with respect to the latter. Specifically, the trial court found that "an award of attorney fees to the McIntyres would be inequitable given the absence of any intent by Griffin to intentionally deceive the McIntyres, and given that the McIntyres only complained about Griffin's performance after Griffin demanded the balance of the proceeds."

{¶ 45} We find the trial court's decision to not award attorney fees was not unreasonable, arbitrary, or unconscionable. As the trial court found, the record does not contain any evidence demonstrating Griffin knowingly committed an act or practice that

violated the CSPA. Therefore, the trial court's decision does not constitute an abuse of discretion.

{¶ 46} Accordingly, the McIntyres' second of assignment of error is overruled and the judgment of the trial court is affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.