[Cite as *Iannetta v. JDL Concrete*, 2025-Ohio-5472.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| ANTHONY IANNETTA, | **CASE NO. 2025-L-044** |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Painesville Municipal Court |
| JDL CONCRETE, | |
| Defendant-Appellant. | Trial Court No. 2025 CVI 00299 |

## OPINION AND JUDGMENT ENTRY

Decided: December 8, 2025
Judgment: Affirmed in part, reversed in part, and remanded

*Anthony Iannetta*, pro se, 501 Cedarbrook Drive, Painesville, OH 44077 (For Plaintiff-Appellee).

*Matthew S. Ziccarelli*, Ziccarelli Law, 8754 Mentor Avenue, Mentor, OH 44060 (For Defendant-Appellant).

ROBERT J. PATTON, P.J.

{¶1} Appellant, JDL Concrete ("JDL Concrete"), appeals the judgment of the Painesville Municipal Court, Small Claims Division, which found in favor of appellee, Anthony Iannetta ("Iannetta"), on his breach of contract claim.

{¶2} JDL Concrete alleges that the trial court erred in finding that JDL Concrete breached the contract when it failed to install a driveway free of defects. JDL Concrete also asserts that the trial court erred when it awarded Iannetta $6,000 in damages, plus 8% interest.

{¶3}     Upon review of the record and pertinent law, we conclude the trial court did not abuse its discretion when it concluded that JDL Concrete breached the contract. However, the record is unclear what measure of damages the trial court employed in its determination. There is no evidence in the record to support the amount of damages awarded.

{¶4}     Accordingly, the judgment of the Painesville Municipal Court, Small Claims Division, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this court's opinion.

### Substantive and Procedural Facts

{¶5}     On February 12, 2025, Iannetta filed a complaint alleging that JDL Concrete was hired to pour and finish a partial driveway, apron, and sidewalk at his residence in Painesville, Ohio. Shortly after the concrete was replaced, Iannetta noticed defects in the new concrete. Iannetta sought judgment in the amount of $6,000 plus 10% interest. JDL Concrete did not file an answer to the smalls claims complaint.

{¶6}     The matter proceeded to a trial on March 26, 2025. The following testimony was presented at the trial:

{¶7}     In March 2023, Iannetta and JDL Concrete entered into a contract. According to the contract, JDL Concrete was to replace approximately 52 feet of Iannetta's driveway, the apron, and sidewalk for $7,600. The contract further provided "all work to be completed in a workman like manner." Iannetta issued two payments to JDL Concrete: $3,800 on March 13, 2023, and $4,700 on April 6, 2023. The total amount paid to JDL Concrete was $8,500. The work on the driveway was completed in April 2023.

Case No. 2025-L-044

{¶8}   Approximately 18 months after the work was completed, Iannetta alleged that there were several apparent defects in the new driveway including holes or spalling. Iannetta asserted that the cement decayed and disintegrated, particularly where the road salt had come into contact with the driveway.

{¶9}   Iannetta's father, Anthony Iannetta II ("Anthony"), testified at the hearing. Anthony testified that he was a concrete contractor in his early life and also drove a concrete mixer. Anthony averred that based on his knowledge of concrete, he believed that the "concrete probably didn't get enough pure cement or it was washed out" due to its brown hue. Anthony further testified that he believed the concrete was weak and decaying because it "wasn't exactly a good mix." According to Anthony, it is discernible when there has been a bad mix.

{¶10}   Johnny D. Lucas ("Lucas"), the owner of JDL Concrete also testified. According to Lucas, he poured the driveway and there was nothing wrong with the workmanship. Lucas denied that he poured the driveway when it was wet. Lucas testified that it was "chilly" outside the day the driveway was poured and that he did not use calcium in the concrete. Lucas stated that it took a little longer for it to set up but once it was done, the driveway was sealed.

{¶11}   At the trial, Lucas stated he did not know why the concrete was failing. Lucas testified that he "did everything [he] could for [Iannetta]" including resealing the driveway two days after Christmas.

{¶12}   JDL Concrete did not dispute that the driveway had visible flaws. JDL Concrete offered to replace a block of the driveway where the car was parked and the driveway was deteriorating. According to Lucas, he offered to remove a section of the

Case No. 2025-L-044

driveway, approximately 10' by 11', to cure the defect. However, before he could cure the defect, Lucas alleged he received the notice to appear in court.

{¶13} According to Lucas, Cashen Ready Mix supplied the concrete for the job at Iannetta's residence. John Dulik ("Dulik"), an employee of Cashen Ready Mix, testified at the trial. Dulik opined that no one was at fault for what happened to the concrete. According to Dulik, "[t]here's no way to visually tell if a load's good or bad as it comes out of the truck." Dulik testified that "the concrete there has 590 pounds of straight cement in it." Dulik indicated that the pictures submitted as Plaintiff's Exhibit 5, depict "typical scaling from salt damage mainly." He testified that the damage can be caused by several things including, but not limited to, the concrete mix, friction, excessive road salt, and the weather.

{¶14} Prior to the conclusion of the hearing, there was one last attempt to settle the case. JDL Concrete and Cashen Ready Mix again offered to fix the deteriorating portion of the driveway, but Iannetta declined. JDL Concrete refused to replace the entire driveway.

{¶15} After the trial, the trial court determined that "[JDL Concrete]'s failure to provide a properly installed driveway, free from defects such as spalling, constitutes a breach of contract." The trial court ordered JDL Concrete to pay $6,000 in damages at 8% interest per annum from March 26, 2025, and costs of the action.[1]

{¶16} JDL Concrete appeals from that entry and raises two assignments of error for review:

---

1. This judgment was stayed pending appeal.

Case No. 2025-L-044

{¶17} [1.] "The trial court erred when it found defendant-appellant committed breach of contract for failing to properly install the driveway free of defects."

{¶18} [2.] "The trial court erred when it granted judgment in the amount of $6,000.00 plus 8% interest to plaintiff-appellee because defendant appellant had substantially performed under the contract and damages are to be the cost of repairs."

## Breach of Contract Claim

{¶19} In its first assignment of error, JDL Concrete asserts that it substantially performed under contract, therefore the trial court should not have found that it breached the terms of the contract.

{¶20} We review small claims proceedings under an abuse of discretion standard of review. *Terrell v. Morgan Furniture*, 2022-Ohio-3981, ¶ 15 (11th Dist.), citing *Majecic v. Universal Dev. Mgt. Corp.*, 2011-Ohio-3752, ¶ 21 (11th Dist.). A trial court's "'failure to exercise sound, reasonable, and legal decision-making'" is an abuse of discretion. *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black's Law Dictionary* 11 (8th Ed. 2004). "When a pure issue of law is involved in appellate review, the mere fact that the reviewing court would decide the issue differently is enough to find error." *Terrell* at ¶ 15, citing *Beechler* at ¶ 67. Conversely, "where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.*

{¶21} JDL Concrete asserts that the trial court's decision is against the manifest weight of the evidence. Specifically, JDL Concrete contends that the record does not reflect that Iannetta was unable to use the driveway for the intended purpose; thus, JDL Concrete fulfilled its contractual obligations of installing a driveway.

{¶22} In an appeal from a bench trial, this court reviews the trial court's factual findings under the manifest weight standard of review and the trial court's legal findings are reviewed de novo. *Riley v. Kavanaugh*, 2024-Ohio-5765, ¶ 20-25 (11th Dist.), quoting *Ultimate Salon & Spa, Inc. v. Legends Constr. Group*, 2019-Ohio-2506, ¶ 30 (11th Dist.). A reviewing court applies the same standard used in reviewing a criminal judgment when considering whether a civil judgment is against the manifest weight of the evidence. *Id.*, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17.

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis deleted.) *Thompkins* at 387, quoting Black's Law Dictionary (6th Ed. 1990). "'The [appellate] court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

*Kavanaugh* at ¶ 22.

{¶23} A reviewing court will not reverse a judgment as being against the manifest weight of the evidence if the judgment is supported by some competent, credible evidence going to all the essential elements of the case. *C. E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus; *State v. Wilson*, 2007-Ohio-2202, ¶ 24; see *Norwalk MK, Inc. v. McCormick*, 2006-Ohio-4640, ¶ 27 (6th Dist.). Thus, "'[a] court of appeals [must] be guided by a presumption that the findings of the trier-of-fact were indeed correct . . . . The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their

Case No. 2025-L-044

demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Kavanaugh* at ¶ 23, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶24} The general rule of contract formation, whether the contract is verbal or written, there must be "(1) an offer; (2) acceptance; (3) consideration; and (4) a legal subject matter." *Id.* at ¶ 24, quoting *Camastro v. Motel 6 Operating*, *L.P.*, 2001 WL 435361, *2 (11th Dist. April 27, 2001). It is undisputed that the written contract between Iannetta and JDL Concrete met these requirements.

{¶25} In order for Iannetta to establish a breach of contract claim, Iannetta was required to demonstrate "(1) the existence of a binding contract or agreement; (2) the non-breaching party performed its contractual obligations; (3) the breaching party failed to fulfill its contractual obligations without legal excuse; and (4) the non-breaching party suffered damages as a result of the breach." *Cafaro-Peachcreek Joint Venture Partnership v. Spanggard*, 2022-Ohio-4468, ¶ 28 (11th Dist.), citing *Utz v. Stovall*, 2013-Ohio-4299, ¶ 28 (11th Dist.).

{¶26} Here, Iannetta presented evidence that he paid JDL Concrete to replace his driveway. Iannetta presented photographs of the driveway which captured chips, flakes, and holes in the concrete. JDL Concrete did not contest that there were defects in the concrete's appearance. Dulik testified that Iannetta's photographs in Plaintiff's exhibit 5, depict "typical scaling from salt damage" but could be caused by several things such as the concrete mix, friction, and the weather. The defects to the surface of the concrete are discernible from the record.

Case No. 2025-L-044

{¶27} Despite the discernible defects, JDL Concrete alleges that it substantially complied with the contract.

> In Ohio, a "long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract. Merely nominial, trifling, or technical departures are not sufficient to breach the contract." *Ohio Farmers' Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, paragraph two of the syllabus. "Where a party has substantially performed its contract obligations, the party is entitled to payment under a contract." *Thompson v. Executive Transport Serv.,* 6th Dist. No. E-03- 018, 2004-Ohio-686, 2004 Ohio App. LEXIS 661, *6, citing *Zolg v. Yeager* (1997), 122 Ohio App. 3d 269, 275. "Substantial performance of a contract is interpreted to mean *** that slight departures, omissions and inadvertences should be disregarded." *Kichler's, Inc. v. Persinger* (1970), 24 Ohio App.2d 124, 126, see also *Thompson, supra*. "For the doctrine of substantial performance to apply, the part unperformed must not destroy the value or purpose of the contract." *Hansel v. Creative Concrete & Masonry Constr. Co.,* 148 Ohio App.3d 53, 56, 2002-Ohio-198. Therefore, a "material breach" or an error which goes to the heart of the contract will undermine a promisor's claim despite his or her performance.
>
> The question of whether a contractor has substantially performed under a contract is one of fact and degree. Hence, there is no "rule of thumb" for determining whether obligations in an agreement have been substantially performed. Nevertheless, certain relevant factors are: the purpose of the contract; the desires being gratified by the contract; the excuse for deviating from the contract's specifications; and the cruelty of requiring the promisor to strictly adhere versus the problems inherent in compelling the promisee to accept something less than that for which it bargained. See *O.W. Grun Roofing & Construction Co. v. Cope* (1975), 529 S.W.2d 258, 261.

*Warren Concrete & Supply, Inc. v. Strohmeyer Contracting, Inc.*, 2010-Ohio-5395, ¶ 18-19 (11th Dist.).

{¶28} JDL Concrete relies upon *Hansel v. Creative Concrete & Masonry Constr. Co.,* 2002-Ohio-198 (10th Dist.), to support its position that it substantially complied with

Case No. 2025-L-044

the contract. *Hansel* involved a similar contract for a residential driveway. The contract contained specific requirements for thickness of the concrete and required wire mesh be used. *Hansel* at ¶ 16. The record indicated that there were defects with the driveway including cracking, scaling, and pitting and "that these defects were largely due to appellee's failure to act in a workmanlike manner. *Id*. at ¶ 17. Additional problems included an uneven subbase, misplacement of the wire mesh, and an average thickness below the contract's requirements. *Id.* In *Hansel,* the appellate court affirmed the lower court's decision finding the record support the finding that the driveway had not failed in its essential purpose and that Creative Concrete substantially performed under the contract.

{¶29} In the case sub judice, Dulik testified, "Iannetta does have a driveway. It's just not aesthetically pleasing, but it's a driveway still." According to Ianneta, the driveway continues to decay. Iannetta testified that "wherever the tires go or wherever the drippings of the salt drips, the concrete just lifts up and it's just deteriorating very badly."

{¶30} The deficiency in this case, while mostly aesthetic, frustrates the purpose of the contract in a real and substantial sense. "The doctrine of substantial compliance allows for minor deviations from contractual specifications; it does not, however, vouchsafe a contractor a license to install whatever is, in his judgment, 'just as good.'" *Warren Concrete & Supply, Inc*., 2010-Ohio-5395 at ¶ 23 (11th Dist.).

{¶31} Upon review of the record there was competent, credible evidence that the concrete did not meet the workman like standards as provided in the contract and constituted a breach of contract. *Id.* at ¶ 23.

{¶32} Accordingly, JDL Concrete's first assignment of error is without merit.

Case No. 2025-L-044

**Damages**

{¶33} In its second assignment of error, JDL Concrete asserts that the trial court erred when it determined the amount of damages. Specifically, JDL Concrete contends that the trial court should have awarded damages based on the cost of repair instead of the initial invoice amount.

{¶34} We review a trial court's award of damages for abuse of discretion. *Green Maple Enterprises, LLC v. Forrester*, 2021-Ohio-4640, ¶ 44 (7th Dist.), citing *Griffin Contracting and Restoration v. McIntyre*, 2018-Ohio-3121, ¶ 35 (12th Dist.), citing and quoting *Roberts v. United States Fid. & Guar. Co.*, 1996-Ohio-101, ¶ 12. "However, the standard of review is de novo for how a trial court measures damages and for a challenge to the sufficiency of the evidence relating to damages." *Id.*, citing *Younker v. Hayes,* 2018-Ohio-835, ¶ 23 (9th Dist.).

{¶35} Generally, the proper measure of damages for breach of a construction contract is the cost of repair. *Angles v. West*, 2003-Ohio-464, ¶ 9 (4th Dist.), citing *Ohio Valley Bank v. Copley*, 121 Ohio App.3d 197, 210 (4th Dist. 1997). *See Hansel v. Creative Concrete & Masonry Constr. Co.*, 2002-Ohio-198 (10th Dist.); *see also*, *Barton v. Ellis*, 34 Ohio App.3d 251 (10th Dist.). If, however, the repair would lead to unreasonable economic waste, then the damages can be measured by the difference in the market value between the structure as contracted for and the value of the structure as received. *Angles* at ¶ 9, citing *Ohio Valley Bank*.

{¶36} In his complaint, Iannetta sought $6,000 and 10% interest. Iannetta did not provide any indication of how he arrived at the request or present any evidence to support the request. It was Iannetta's burden to prove damages. *Davis v. J & J Concrete*, 2019-

Ohio-1407, ¶ 30 (11th Dist.), citing *Hansel,* 2002-Ohio-198 at ¶ 27; see *Akro-Plastics v. Drake Industries*, 115 Ohio App.3d 221, 226 (11th Dist.1996). From the record, it appears Iannetta wrote two checks to JDL Concrete totaling $8,500. Iannetta presented no evidence regarding the cost of replacement or repair of the driveway. It was suggested by the parties that remedial measures such as resealing the driveway did not resolve the issue. Thus, it appears the solution would be to replace the affected concrete. However, no evidence was presented as to the cost of replacement.

{¶37} Here, the trial court did not expressly indicate what measure of damages it used to calculate the amount of damages awarded. Instead, it appears that the trial court simply adopted the number requested by Iannetta. Because there is no evidence in the record to support the calculation of damages, the judgment of the Painesville Municipal Court is reversed.

{¶38} This matter is remanded for further proceedings consistent with this opinion. Upon remand, the trial court shall hold a new hearing to solely address damages. At this hearing, both parties shall have the opportunity to present evidence as to the appropriate level of damages.

Case No. 2025-L-044

## Conclusion

{¶39} The judgment of the Painesville Municipal Court, Small Claims Division, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this court's opinion.

MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Painesville Municipal Court, Small Claims Division is affirmed in part and reversed in part. This case is remanded to the trial court for further proceedings to calculate damages in accordance with the opinion.

Costs to be taxed against the parties equally.

_____
PRESIDING JUDGE ROBERT J. PATTON

_____
JUDGE MATT LYNCH,
concurs

_____
JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-L-044